# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

RACHEL WILLIAMS AND GENOVEVA )
MILTON, on behalf of themselves and all )
others similarly situated, )
                                            )
                Plaintiffs, )           Case No. 1:24-CV-00642-NRN
                                            )
v. )
                                            )
AIR METHODS, LLC, )
                                            )
                Defendant )
                                              )
_____ )

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Plaintiffs Rachel Williams and Genoveva Milton ("Plaintiffs") submit this Motion and Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant Air Methods, LLC ("Air Methods") has represented that it does not oppose this motion.

## I.    INTRODUCTION

This litigation arises from the alleged access to personal identifying information ("PII") as a result of a November 2023 stolen laptop incident experienced by Defendant (the "Security Incident"). Plaintiffs and Class Members include current and former customers of Air Methods, and air ambulance service operating in Colorado.

After extensive arm's length negotiations, the parties have reached a settlement that is fair, adequate, and reasonable. The agreement creates a $240,000 non-reversionary Settlement Fund where Class Members can easily submit a claim for an estimated $75 pro rata cash payment, reimbursement of documented out-of-pocket expense award of up to $2500, and two-years of Identity Defense Total Credit Monitoring. Plaintiffs strongly believe the settlement is favorable to the Settlement Class.

Pursuant to Rule 23(e), Plaintiffs move the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Accordingly, and relying on the following memorandum of points and authorities, the Supporting Declaration of Plaintiffs' Counsel and attached exhibits filed herewith, Plaintiffs respectfully request the Court preliminarily approve the Parties' Settlement Agreement and issue the proposed order attached to Settlement Agreement (**Exhibit 1** to this motion) as Exhibit D.

## II.    CASE SUMMARY

### A.     The Security Incident

This is a nationwide class action brought by Plaintiffs on behalf of themselves, and a class of "All individuals residing in the United States whose Private Information was compromised in the data breach announced by Defendant in February 2024, and who were sent direct notice of the data breach (the "Class")." (*See generally* Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 18, ¶ 162.) In their SAC, Plaintiffs alleged individually and on behalf of a putative class that, as a direct result of the Security Incident, Plaintiffs and Class Members suffered numerous injuries and would likely suffer additional harm in the future. Plaintiffs' claims for alleged damages and remedies included the following categories of harms: (i) the current and imminent risk of fraud and identity theft;  (ii) the lost or diminished value of the PII; (iii) the out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) the lost opportunity costs associated with attempting to mitigate the actual consequences of the Security Incident, including but not limited to lost time; (v) the continued and certainly increased risk to their PII, which remains unencrypted and available for unauthorized third parties to access and abuse; (vi) the invasion of privacy; (vii) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and the Class Members' PII; and (viii) the emotional distress, fear, anxiety, nuisance, and annoyance related to the theft and compromise of their PII.

Plaintiffs, individually and on behalf of other members of the Class, asserted claims for (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; and (iv) unjust enrichment. Plaintiffs also sought injunctive relief, equitable relief, actual, statutory, nominal, and consequential damages, and all other relief as authorized in equity or by law. Defendant denies all claims, allegations of wrongdoing, and denies all liability.

### B.    Procedural Posture

On March 8, 2024, Plaintiff Rachel Williams filed the first complaint against Defendant in this Court for claims arising from the Security Incident. On March 15, 2024, Plaintiff Genoveva Milton filed a second related Complaint in this Court. On May 29, 2023, Plaintiff Milton dismissed her separate action, and agreed to be added as an additional plaintiff to the *Williams* action. Also on May 29, 2024, the Plaintiffs filed their Amended Complaint in the Williams action. ECF No, 14. Subsequently, on July 11, 2024, Plaintiffs filed their Second Amended Complaint ("SAC"), correcting by stipulation a misnomer of the Defendant (which had changed its name and corporate structure to an LLC in 2023). ECF Nos. 17 and 18. In their SAC, Plaintiffs alleged individually and on behalf of a putative class that, as a direct result of the Security Incident, Plaintiffs and Class Members suffered numerous injuries and would likely suffer additional harm in the future.

Soon after the two initial complaints were filed, the Parties began discussing the prospect for early resolution.  These talks were spurred on by Defendant producing informal discovery that addressed the manner and mechanism of the Security Incident (i.e. a stolen laptop, as opposed to a cybersecurity breach perpetrated by a cybercriminal), the number of impacted individuals who received direct notice of this Security Incident, and Defendant's notice program and incident response. Prior to resolving the matter, the Parties engaged in a considerable amount of this informal discovery, spanning several weeks.

Ultimately, after hard-fought, arms-length negotiations, the Parties were able to reach a resolution. The agreed resolution or settlement is memorialized in the Settlement Agreement ("S.A."), attached hereto as **Exhibit 1**. The Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendant and

the Released Parties relating to the Security Incident and this Action, by and on behalf of Plaintiffs and Class Members.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Benefits

The settlement negotiated on behalf of the Class provides for a $240,000 non-reversionary Settlement Fund and a claims process through which Class Members can easily submit for substantial settlement benefits. The settlement provides for relief for the approximately 24,568 members of the Settlement Class defined as follows:

> **The approximately 24,568 individuals who received direct notification that their Personal Information may have been implicated in the Security Incident.**

The Class specifically excludes: 1) Air Methods, LLC and its officers and directors; (2) all Persons who submit a timely and valid request for exclusion from the Settlement Class; (3) the Court; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident,  or who pleads *nolo contendere* to any such charge S.A. ¶ 30.

The benefits that Settlement Class can claim from the non-reversionary common fund include the following:

a) <u>$75 Pro-Rata Cash Payment</u>. Settlement Class Members may claim a pro rata cash payment from the Settlement Fund, estimated to be $75 (based upon historic claims rates in similar data privacy settlements). After the distribution of attorneys' fees, Class Counsel's litigation expenses, Administrative Fees, Service Awards, Documented Out-of-Pocket Expense Claims, and the cost of the Identity Defense Total Credit Monitoring, the Settlement Administrator will make pro rata settlement payments of the remaining Settlement Fund to each Class Member who submits a valid claim. This

may cause a pro rata increase or decrease of the estimated $75 cash payment. No documentation or attestation is required. S.A. ¶ 50.

b) <u>Documented Out-of-Pocket Expense Claims</u>. Class Members can submit claims for reimbursement of documented out-of-pocket losses reasonably traceable to the Security Incident up to $2,500 per individual ("Out-of-Pocket-Expense Claims"). "Documented Out-of-Pocket Losses" means the unreimbursed costs or expenditures incurred by a Settlement Class Member between November 9, 2023 and the Claims Deadline, as result of the Security Incident. Documented Out-of-Pocket Losses may include, but are not limited to, unreimbursed costs, expenses, or charges incurred addressing or remedying identity theft, fraud, or misuse of personal information and/or other issues reasonably traceable to the Security Incident. S.A. ¶ 47.

c) Identity Theft Protection and Credit Monitoring. Settlement Class Members may submit a Claim for two (2) years of Identity Defense Total Credit Monitoring, a state-of-the-art identity theft and credit monitoring product provided by CyEx. S.A. ¶ 51.

Given the fact that all the net money in the Settlement Fund will be "swept out" of the Settlement Fund and distributed to Settlement Class Members via the pro rata cash payments, the only anticipated residual funds will be from uncashed checks or unnegotiated electronic payments. The total amount of uncashed Settlement checks will be paid to a charitable organization to be agreed upon by Defendant and Class Counsel and approved by the Court. S.A. ¶ 55.

**B.    The Notice and Claims Process**

After evaluating competitive bids, the Parties have agreed to use Simpluris as Settlement Administrator in this case. S.A. ¶ 29. The cost of notice and claims administration is estimated to

be approximately $38,940. Declaration of David Lietz ("Lietz Decl."), attached hereto as Exhibit 2, ¶ 31.

### 1.    Notice

The current and agreed upon Notice Plan calls for direct and individual Notice, in the form of summary postcards, to be provided to Class Members via United States Postal Service first class mail. S.A. ¶ 58(b). The Settlement Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the claim period, with the forms of Postcard Notice, Long Form Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. S.A. ¶ 32. The Settlement Administrator will also make a toll-free telephone line for Class Members to call with Settlement-related inquiries, and establish and maintain a post office box for mailed written notifications of exclusion or objections from the Settlement Class.

The details of the Notice Program are set out more fully in the Settlement Agreement, and the forms of notice (Long Form and Postcard) are attached thereto as Exhibits B and D.

### 2.    Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to request exclusion or object. S.A. ¶¶ 4, 24, 15. Class Members will have 90 days from the Class Notice Deadline to submit their Claim Form to the Settlement Administrator, either electronically or by mail, and 60 days to object or request exclusion. *Id.* The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Class Members' ease in completing it. *See* S.A. Ex. A.

To submit a claim for the estimated $75 pro rata cash payment and the identity theft protection and credit monitoring, Class Members need only confirm and attest to the best of their

knowledge or belief that they are Class Members. For a Reimbursement Award, Class Members must submit documentation showing that they incurred unauthorized or fraudulent charges or Out-of-Pocket Expenses fairly traceable to the Security Incident, that those losses were not otherwise reimbursed, and attest that the claim is true and correct to the best of his or her knowledge or belief. The Settlement Administrator is given the authority to assess the validity of claims. S.A. ¶¶ 58(k), 58(p).

### 3.    *Requests for Exclusion and Objections*

Any Class Members who wish to exclude themselves from or object to the Settlement shall have until 60 days after the Notice Date to do so. S.A. ¶¶ 15, 24. Each Settlement Class Member wishing to exclude themselves from the Settlement Class must individually sign and timely mail a written Request for Exclusion to the address designated by the Settlement Administrator, and clearly manifest intent to opt-out. S.A. ¶ 59. Any Settlement Class Member who files a valid exclusion request shall be excluded from the Settlement Class, and not obtain any benefit hereunder and not offer any release to the Released Parties. S.A. ¶ 60.

Class Members shall have until 60 days after the Notice Date to object to the Agreement. S.A. ¶ 15.  Class Members can make objections by mailing the objections to the Settlement Administrator, and Class Counsel shall file all objections with the Court. Objections shall state: (i) the objector's full name, current address, current telephone number, and be personally signed, (ii) the case name and case number, *Williams et al. v. Air Methods*, *LLC*, Civil Action No.1:24-cv-00642-NRN, (iii) documentation sufficient to establish membership in the Class, such as a copy of the Postcard Notice he or she received, (iv) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position(s), (v) copies of any other documents that the objector wishes to submit in support of his/her position, (vi) whether the objecting

Settlement Class Member intends to appear at the Final Approval Hearing, and (v) whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address, and telephone number of his/her counsel. S.A. ¶ 64.

### C.    Plaintiffs' Service Awards, Attorneys' Fees and Costs

The Settlement Agreement calls for a reasonable service award to each Class Representative in the amount of $2,500, subject to Court approval, to be paid solely from the Settlement Fund and subject to Court approval. S.A. ¶ 40.

Class Counsel may file a motion seeking reasonable attorneys' fees in an amount not to exceed one-third (or $80,000) of the Settlement Fund. S.A. ¶ 41. In addition, Class Counsel may seek their reasonable costs and expenses from the Settlement Fund.  The entirety of the Attorneys' Fees and Expenses Award shall be payable solely from the Settlement Fund.  Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards no less than 14 days prior to prior to Class Members' deadline to exclude themselves from or object to the Settlement Agreement.

## IV.    LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. *See also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (approval of a proposed settlement is within the sound discretion of the Court)). The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.

Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and directs notice to be given to the class. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659

(D. Colo. 2018). "The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing." *Rhodes*, 308 F.R.D. at 666 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (Kane, J.)). In the second stage, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms and grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *Rutter,* 314 F.3d at 1188.

"The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc*., 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.,* 310 F.R.D. at 314-315.

"The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness." *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage." *Id*.; *see also Lucas*, 234 F.R.D. at 693. Representative Plaintiffs here seek preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). "Colorado public and judicial policies favor voluntary agreements to settle legal disputes." *See Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo.1992)(*en banc*); *Davis v. Flatiron Materials Co*., 182 Colo. 65, 511 P.2d 28, 32 (Colo.1973)(*en banc*).

There is a strong presumption in favor of finding Settlement Agreements fair, adequate and reasonable – especially when the settlement of a class action results from arm's length negotiations between experienced counsel after significant discovery has occurred. *Lucas*, 234 F.R.D. at 693. Compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties, "and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997); *Williams v. First Nat'l Bank*, 216 U.S. 582 595 (1910). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

"The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citation omitted). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' motion and allow notice to be provided to the class.

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiffs here seeks certification of a Class consisting of "the approximately 24,568 individuals who received direct notification that their Personal Information may have been implicated in the Security Incident." The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria". MCL 4th, § 21.632.

Under Rule 23, a class action may be maintained where the movants demonstrate: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011), citing Rule 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, other data breach cases have been certified by this Court. *See Beasley et al. v. TTEC Services Corporation*, Civil Action No. 22-cv-00097-PAB-STV (D. Colo.), ECF 54, May 9, 2023 (order granting preliminary approval of non-reversionary common fund settlement in data breach case); *Jones et al. v. P2ES Holdings, LLC*,

Civil Action No. 23-cv-00408-GPG-MEH (D. Colo.), ECF 39, October 12, 2023 (same). This case is no different.

        1.      *The Settlement Class is so numerous that joinder is impracticable.*

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978)*.* Here, the threshold required to establish numerosity is surpassed, as the proposed Settlement Class includes approximately 24,568 individuals who had their PII potentially compromised in the Security Incident, and who received direct notice of the Security Incident. The Settlement Class is sufficiently numerous to justify certification.

        2.      *Questions of law and fact are common to the Settlement Class.*

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The threshold for meeting this prong is not high— the requirement is satisfied where the plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 347. Commonality can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse. *Soseeah v. Sentry Ins.*, No. CIV 12-01091 RB/KK, 2016 WL 7435792, at *4 (D.N.M. 2016), citing *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Air Methods failed to adequately safeguard the records of Plaintiffs and other Class Members is a question common across the entire class. Air Method's data security safeguards (including safeguards of physical assets containing PII, like the stolen laptop here) were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Air Methods failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Security Incident;

- Whether Air Methods' data security practices relating to physical assets prior to and during the Security Incident complied with applicable data security laws and regulations; and

- Whether Air Methods' conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in the SAC, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

        *3.*     *Plaintiffs' claims and defenses are typical of the Settlement Class.*

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 126 (D. Colo. 2016), quoting *Bass v. PJCOMN Acquisition Corp*., No. 09-CV-01614-REB-MEH, 2011 WL

2149602, at *2 (D. Colo. June 1, 2011). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id.*, quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiffs' and Class Members' claims all stem from the same event—the laptop stolen from Air Methods containing their PII—and the data security protocols that Air Methods had (or did not have) in place to protect Plaintiffs' and Class Members' data. Thus, Plaintiffs' claims are typical of the Class Members' and the typicality requirement is satisfied.

> 4.   *Plaintiffs and their counsel will provide fair and adequate representation for the Settlement Class.*

Representative plaintiffs must be able to provide fair and adequate representation for the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego*, 313 F.R.D. at 126 (citing *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010). To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Security Incident. Plaintiffs' and Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Class Members will all be eligible for the same $2500 documented out-of-pocket loss reimbursements, the same $75 payment, reduced or increased pro

rata based on the claims rate and availability of funds, and the same identity theft protection and credit monitoring service. Also, Plaintiffs' anticipated service awards are no more than what any Settlement Class Member can claim.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Lietz Decl, ¶¶ 2-22, Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

5.      *Certification is also appropriate because common issues predominate over individualized ones, and class treatment is superior.*

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold.

First, "[i]n order to 'predominate,' the Court must find that questions of law or fact common to class members predominate over any questions affecting only individual members. *Pliego*, 313 F.R.D. at 126 (citing Fed. R. Civ. P. 23(b)(3). In this case, key predominating questions are whether Air Methods had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class, and whether Air Methods breached that duty. The common questions that arise from Air Methods' conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case

despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).[1]

Second, the resolution of over 24,000 claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Security Incident. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

## B.    The Settlement Terms are Fair, Adequate, and Reasonable.

On preliminary approval, and prior to approving notice be sent to the proposed Class, the Court must determine that it will "likely" be able to grant final approval of the Settlement under

---

[1] *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

Rule 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the Tenth Circuit, approval of a class action settlement is committed to the sound discretion of the Court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, this court should grant preliminary approval and allow notice to issue to the class.

       *1.*      *Whether the settlement was fairly and honestly negotiated.*

The negotiations in this matter occurred at arm's length. Lietz Dec. at ¶ 29. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). In this case, the Parties engaged in protracted, adversarial, arms-length negotiations. While these negotiations were always professional and collegial, there is no doubt that they were adversarial, as counsel for the respective Parties are frequent adversaries in data privacy cases across the country. Lietz Decl. ¶ 29.

**2.** *Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.*

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that Air Methods asserts a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. That motion to dismiss would likely include arguments that this is a stolen laptop case, and some courts have been unwilling to let such cases proceed beyond the pleadings stage. See, e.g. <u>Beck v. McDonald</u>, 848 F.3d 262, 267 (4th Cir. 2017) (plaintiffs' claims dismissed for lack of standing in stolen laptop case); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig*., 45 F. Supp. 3d 14, 20 (D.D.C. 2014) (plaintiffs' claims dismissed in stolen data

tapes case for lack of Article III standing). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).  Plaintiffs dispute the defenses Air Methods asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

       3.    *Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.*

The Settlement guarantees Class Members real relief and value for harms as well as protections from potential future fall-out from the Security Incident.

The settlement negotiated on behalf of the Class provides for a $240,000 Settlement Fund where Class Members can easily submit a claim for substantial relief from the Settlement Fund, as outlined above. Even if every single class member were to file a claim, the non-reversionary Settlement Fund provides for a per class member recovery of approximately $9.77 per class member.  This compares favorably to terms approved by courts in other, similar data breach cases. *See, e.g., Dickey's Barbeque Rests., Inc.*, No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for only $2.3 million (or $0.76 per person)); *In re Herff Jones Data Breach Litig.*, No. 21-cv-1329 (S.D. Ind.) (data breach class action

involving more than 1 million people that settled for only $4.35 million (or approximately $4.35 per person).

        4.    *Whether the judgment of the parties and their counsel that the settlement is fair and reasonable.*

The judgment of the parties and their counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data breach litigation, and reported settlements in other data breach class actions. The monetary benefits offered to Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data breach.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from dozens of other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data breach class actions that have been approved by other courts, including those cited above.

The proposed Settlement is a non-reversionary common fund that does not provide any preferential treatment of the named Plaintiffs or any segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). With this proposed Settlement, Class Members are able to recover damages for any injuries caused by the Security Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for

out-of-pocket expenses allow Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Plaintiffs also intend to apply for service awards for the Class Representatives. These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009). A service award to the Class Representatives is appropriate here given the efforts and participation of Plaintiffs in the litigation, and does not constitute preferential treatment. The Class Representatives were not promised a service award, nor did they condition their representation on the expectation of a service award. Lietz Dec. at ¶ 41.

### C.    The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. *See* S.A. Exs. B and D (Long Form and Postcard Notice). Here, the Settlement provides for direct and individual notice, to be sent via first class mail to each Settlement Class Member. S.A. ¶ 58.

Not only has Air Methods agreed to provide Class Members with individualized notice via direct mail through the proposed claims administrator, but all versions of the settlement notice will

be available to Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 32. The Settlement Administrator will also make a post office box and toll-free telephone number available by which Class Members can seek answers to questions about the Settlement.

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* S.A. at Exs. B and D.

The direct mail Notice proposed here is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Cap. Fin. Servs.*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court.

Also, the Settlement Administrator will prepare and send notice in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, et seq. ("CAFA"), to be served upon the appropriate State official in each State where Class Members reside and the appropriate federal official. Costs for preparation and issuance of the CAFA Notice will be paid from the Settlement Fund.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Class Members significant relief in the form of cash payments, reimbursement for documented out-of-pocket losses, and identity theft protection and credit monitoring,. The Settlement is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant their Unopposed Motion for Preliminary Approval of Class Action Settlement.

Dated: July 15, 2024                    Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
E-mail: gklinger@milberg.com

David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
E-mail: dlietz@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of July, 2024, I caused the foregoing document to be filed with the Clerk of this Court via the Court's CM/ECF system, which will cause a true and correct copy to be served electronically on all counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger