# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RACHEL WILLIAMS AND GENOVEVA MILTON, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>AIR METHODS, LLC,<br><br>   Defendant | Case No. 1:24-CV-00642-NRN |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

I.   **INTRODUCTION**

This litigation arises from the alleged access to personal identifying information ("PII") as a result of a November 2023 stolen laptop incident experienced by Defendant (the "Security Incident"). Plaintiffs and Settlement Class Members include current and former customers of Air Methods, and air ambulance service operating in Colorado.

On July 15, 2024, Plaintiffs moved for preliminary approval of the proposed class action settlement and for certification of the Settlement Class in the above captioned action ("Prelim. Approval Mot."). ECF 22. The Court granted preliminary approval on August 13, 2024, and ordered that the Settlement Class should be given notice. ECF 29 ("Prelim. Approval Order").

Plaintiffs now seek final approval of the settlement and certification of the Settlement Class. Following preliminary approval, the Settlement Administrator, Simpluris, Inc. ("Simpluris"), conducted a comprehensive Court-approved Notice Program with direct notice of the settlement delivered by U.S. First Class mail, a second reminder notice by U.S. First Class Mail, and also published on a dedicated Settlement Website. Declaration of Anne-Marie Marra, attached hereto as **Exhibit 1**, ¶¶ 9-11, 13  ("Marra Declaration" or "Marra Decl.").

The settlement is fair, reasonable, and adequate, and represents an outstanding result for the Settlement Class. Through extensive negotiations, the Parties reached an agreement providing for significant monetary relief for the Settlement Class in the form of a $240,000 non-reversionary fund (the "Settlement Fund"). Declaration of David Lietz in Support of Preliminary Approval (ECF 22-2, "Lietz Decl.") ¶ 29. All 24,568 Settlement Class Members have had the opportunity to make a claim for an estimated $75 pro rata cash payment, reimbursement of out-of-pocket expenses up to $2,500, and two years of state of the art identity theft protection. Lietz Decl. ¶ 33.

If approved, the settlement will resolve all claims arising from the Security Incident and will provide Settlement Class Members with the particular relief this action was filed to obtain. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an Order granting final approval of the settlement and certify the Settlement Class.

## II.     INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 22) filed on July 15, 2024 and the accompanying Exhibits, including the proposed Settlement Agreement (ECF 22-1), filed in conjunction therewith. Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 31), filed on October 28, 2024.

## III.     SUMMARY OF SETTLEMENT

### A.  Settlement Benefits

The settlement negotiated on behalf of the Settlement Class provides for a $240,000 non-reversionary Settlement Fund and a claims process through which Settlement Class Members could easily submit for substantial settlement benefits. The settlement provides for relief for the approximately 24,568 members of the Settlement Class defined as follows:

> **The approximately 24,568 individuals who received direct notification that their Personal Information may have been implicated in the Security Incident.**

The Settlement Class specifically excludes: 1) Air Methods, LLC and its officers and directors; (2) all Persons who submit a timely and valid request for exclusion from the Settlement Class; (3) the Court; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the

3

Security Incident, or who pleads *nolo contendere* to any such charge S.A. ¶ 30.

The benefits that Settlement Class could claim from the non-reversionary common fund include the following:

a) <u>$75 Pro-Rata Cash Payment</u>. Settlement Class Members could claim a pro rata cash payment from the Settlement Fund, estimated to be $75 (based upon historic claims rates in similar data privacy settlements). S.A. ¶ 50.

b) <u>Documented Out-of-Pocket Expense Claims</u>. Settlement Class Members can submit claims for reimbursement of documented out-of-pocket losses reasonably traceable to the Security Incident up to $2,500 per individual ("Out-of-Pocket-Expense Claims"). "Documented Out-of-Pocket Losses" means the unreimbursed costs or expenditures incurred by a Settlement Class Member between November 9, 2023 and the Claims Deadline, as result of the Security Incident. Documented Out-of-Pocket Losses may include, but are not limited to, unreimbursed costs, expenses, or charges incurred addressing or remedying identity theft, fraud, or misuse of personal information and/or other issues reasonably traceable to the Security Incident. S.A. ¶ 47.

c) Identity Theft Protection and Credit Monitoring. Settlement Class Members may submit a Claim for two (2) years of Identity Defense Total Credit Monitoring, a state-of-the-art identity theft and credit monitoring product provided by CyEx. S.A. ¶ 51.

As will be shown below, all the net money in the Settlement Fund will be "swept out" of the Settlement Fund and distributed to Settlement Class Members via the pro rata cash payments, which will exceed the $75 estimated payments. S.A. ¶ 55.

### B. The Notice and Claims Process

The Court appointed Simpluris as the Settlement Administrator. ECF 29 ¶ 6. The cost of notice and claims administration is estimated to be $54,968. Marra Decl. ¶ 25. The increased cost of settlement administration from that estimated at preliminary approval is due almost entirely to the second, reminder notice that Settlement Class Counsel directed Simpluris to prepare and mail. Simpluris carried out notice in accordance with the Court's Preliminary Approval Order and due process.

   1.   **CAFA Notice.**

Simpluris began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Marra Decl. ¶ 4. At the direction of defense counsel, on July 25, 2024, Simpluris sent the CAFA Notice, via First-Class Certified Mail, to (i) the Attorney General of all states and territories, as well as the Attorney General of the United States. *Id.* A copy of the CAFA Notice cover letter is attached hereto as **Exhibit A** to the Marra Declaration.

   2.   **Direct Mail Notice**

On September 12, 2024, Simpluris commenced the Notice Program. Marra Decl. ¶¶ 9-10. The Notice Program included providing notice to the Settlement Class via United States Postal Service First Class mail. Marra Decl. ¶¶ 9-10. The Notices included a "tear-away" claim form with return postage that made it incredibly simple for Settlement Class Members to make claims for the pro rata cash payments and the identity theft protection.

On November 8, 2024, Simpluris mailed at second, reminder notice postcard to those Settlement Class Members who had not yet made a claim. Marra Decl. ¶ 11. Settlement Class Counsel directed this reminder notice (with the concurrence of Defense Counsel) in order to ensure

5

a robust claims rate, and to ensure that the Settlement Benefits were widely distributed to Settlement Class Members.

Simpluris established a dedicated Settlement Website, which it has maintained and updated throughout the claim period with the Long Form Notice, full Claim Form (which Settlement Class Members could use to make claims for documented Out-of-Pocket Losses), Settlement Agreement. Marra Decl. ¶ 13. As of December 19, 2024, the Settlement Website has been visited by 3,884 unique visitors with 10,522 page views. *Id*. Simpluris also established a toll-free telephone number for the purpose of allowing the Settlement Class Members to make inquiries regarding the Settlement. . Marra Decl. ¶ 14. This toll-free helpline included both an interactive voice response system and a live operator option. *Id*. As of December 19, 2024, the settlement specific toll-free telephone number has received 200 phone calls, with 105 of those calls routed to live agents. *Id*. Simpluris established and maintained a post office box for mailed opt-out requests or objections from the Settlement Class.

The direct mail notice campaign was successful. Following all re-mailings and the reminder notice, Simpluris has reason to believe that direct notice likely reached 80.25% of the Settlement Class (19,306 Settlement Class Members). Marra Decl. ¶ 12. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[1] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.

---

[1] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

**II.     Claims, Objections, and Requests for Exclusion**

The claims process was structured to provide all Settlement Class Members adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether to opt-out or object. The Notice Program advised Settlement Class Members of their rights to object to or opt out of the settlement and directed Settlement Class Members to the Settlement Website for more information. Settlement Class Members were provided 90 days from the Notice Date to submit their Claim Form to the Settlement Administrator, either online or by mail. Settlement Class Members were provided 60 days from the Notice Date to opt out or object. To date, no objections have been filed and the Settlement Administrator has received only one (1) request for exclusion. Marra Decl. ¶¶ 16-17.

As of December 19, 2024, Simpluris has received 650 Claim Forms filed. Marra Decl. ¶ 18.  Simpluris is still in the process of reviewing and validating the 650 Claim Forms submitted, but currently, 594 are deemed valid, for a claims rate of 2.47%. *Id.* The Claims Rate for the 19,306 Settlement Class Members whose Notices were successfully delivered is 3.08%. *Id.* at n. 1.

**C.  Attorneys' Fees, Costs, and Service Awards**

Plaintiffs previously filed their Motion for Attorneys' Fees, Costs, and Service Awards to ensure that Settlement Class Members had ample opportunity to review the requested amounts prior to deciding whether to object to or opt-out of the Settlement. Plaintiffs requested an award of attorneys' fees in $80,000 and out-of-pocket expenses of $1,278.50. This fee request represents 33.33% of the total common fund recovery. ECF 31. Plaintiffs also request a service award for each of the Representative Plaintiffs in the amount of $2,500 each. ECF 31. Attorneys' fees, costs, expenses, and the service awards were negotiated only after all the substantive terms of the

7

settlement were agreed upon by the Parties. No Settlement Class Members have objected to the attorneys' fees, expenses, and service awards.

### IV. ARGUMENT

#### A. Final Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class for settlement purposes in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). *See* ECF 29; Fed. R. Civ. P. 23(a)(1)-(4); (b)(3); *Manual for Complex Litig.* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F.Supp.3d 1003, 1007 (D. Colo. May 19, 2014). No developments have since arisen that would modify this conclusion. Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). As established by the facts and arguments stated herein and for the reasons articulated in Plaintiffs' Preliminary Approval Motion, the Settlement Class should now be finally certified for settlement purposes.

#### B. Adequate Notice was Provided

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339

U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

The Notice provided for by the Settlement Agreement meets all the criteria described by Rule 23. *See* Settlement Agreement Exs. B and C (Short and Long Notice). The Settlement provided for direct and individual notice to be sent via First Class mail to each Settlement Class Member. Marra Decl. ¶ 3(d(. Additionally, the Long Form Notice was made available to Class Members on the Settlement Website, along with the Settlement Agreement. As shown above, the Settlement Administrator also set up a post office box and toll-free telephone number by which Class Members could seek answers to questions about the Settlement.

As noted above, the notice program was successful, reaching 80.25% of the Settlement Class Members. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in Colorado, the Tenth Circuit and across the United States. 80.25% is within the "norm" for successful notice. *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010). Simpluris and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23, and satisfies due process requirements. The Notice Plan provided the best notice practicable, and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

C. **Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed herein, and as articulated in the Lietz Declaration in support of the Preliminary Approval Motion, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. ECF 22-2, Lietz Decl. ¶¶ 2-22. The proposed Settlement Class Counsel have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the settlement of this matter to the benefit of the Settlement Class. Accordingly, Plaintiffs request that the Court finally appoint Gary M. Klinger, and David K. Lietz as Settlement Class Counsel.

### D. The Settlement Should be Finally Recognized as Fair, Reasonable, and Adequate

For a settlement to receive final approval under Rule 23(e)(2), the court must consider whether the settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is adequate …; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In making such a determination, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

Courts in the Tenth Circuit have sound discretion whether to approval a class action settlement. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and

11

honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

Here, because the Settlement is fair, reasonable, and adequate under both Rule 23(e) and the *Jones* factors, this court should grant preliminary approval.

### 1. The Settlement was Fairly and Honesty Negotiated

The negotiations in this matter occurred at arm's length. ECF 22-2, Lietz Decl. ¶ 29. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, F.R.D. at 693. This reinforces the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e).

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Defendant's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and legal claims Plaintiffs pled in their Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. Stolen laptop cases of this type have generally not fared well in litigation. *See, e.g. Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (affirming dismissal of stolen laptop data breach case where plaintiffs could produce no evidence that the "laptop has been accessed or misused or that they have suffered identity theft, nor, for that matter, that the thief stole the laptop with the intent to steal their private information."). In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on

the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. The field of data breach litigation is evolving; there is no guarantee of the ultimate result. Here, the value achieved through the Settlement Agreement here is guaranteed, where changes of prevailing on the merits are not certain. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases … are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also recognize that Defendant would assert a number of potentially case-dispositive defenses. Should litigation continue, it is likely Plaintiffs would have to immediately survive a motion to dismiss in order to proceed with litigation. Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this generally face substantial hurdles, even to survive the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is

rife with uncertainty. Moreover, because of the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Class Members can have a chance at relief.

### 3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

The settlement provides for substantial relief in light of the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. The Settlement negotiated on behalf of the Class provides for a $240,000 Settlement Fund where Class Members could easily submit a claim for substantial relief from the Settlement Fund. This settlement will result in cash payments to those making valid claims in amounts ranging from $89.75 to $168.08 per person (depending upon the number of out of pocket loss claims approved). Marra Decl. ¶ 23. Not only does this exceed the $75 estimate for the cash payment (at both the high and low ends of the estimated payment), but Class Members making valid claims will likely receive over double the amount that Class Counsel estimated. Even if every single Class Member had filed a claim, the non-reversionary Settlement Fund provides for a per-class member recovery of approximately $9.77 per Class Member. This compares rather favorably to terms approved by courts in other, similar data security cases, as shown in the chart below:

| Case | Settlement Amount | Class Members | Per Person Recovery |
|---|---|---|---|
| *Holden v. Guardian Analytics, Inc.*, No. 2:23-cv-2115 (D.N.J.) | $1,430,207.50 | 197,270 | $7.25 |
| *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Tucker v. Marietta Area Health Care*, No. 2:22-cv-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |
| *Bingaman, et al. v. Avem Health Partners Inc.*, No. CIV23-130 (W.D. Okla.) | $1,450,000 | 271,303 | $5.34 |
| *In re C.R. England, Inc. Data Breach Litig.*, No. 2:22-cv-374 (D. Utah) | $1,400,000 | 219,208 | $6.39 |

14

| | | | |
|---|---|---|---|
| *Fernandez v. 90 Degree Benefits Wisconsin et al*, No. 2:22-cv-799 (E.D. Wis.) | $990,000 | 183,329 | $5.40 |
| *Kondo et al. v. Creative Services, Inc.*, No. 1:22-cv-10438 (D. Mass.) | $1,200,000 | 164,956 | $7.27 |

In addition to the cash benefits, Class Members could and did also claim the valuable state-of-the-art identity theft protection. There is no question that this Settlement delivered real, tangible value to the Class Members.

### 4. The Judgment of the Parties and their Counsel that the Settlement is Fair and Reasonable

The judgment of the parties and their counsel also supports a finding that the settlement is fair and reasonable. Here, the Parties entered into the Settlement only after both sides were fully apprised on the facts, risks, and obstacles involved with protracted litigation. The monetary benefits offered to Settlement Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data security incident. Additionally, adequacy of representation requirement is satisfied as to Representative Plaintiffs because Plaintiffs' interests are coextensive with—and not antagonistic to—the interests of the Settlement Class. Plaintiffs' claims are aligned with that of the other Settlement Class Members. They thus have every reason to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process.

The benefits available here compare favorably to what Settlement Class Members could recover if successful at trial and provide meaningful benefits to the Settlement Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data incidents, and have reviewed claims data from other settlements, the relief provided by this Settlement should be

15

considered an outstanding result and benefit to the Settlement Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data security class actions that have been approved by other courts, including those cited above.

### 5. There are No Additional Agreements Required to be Identified Under Rule 23(e)(3)

There are no additional agreements required to be identified under Rule 23(e)(3. Because no such additional agreements exist, this factor does not weigh in favor of or against final approval.

### 6. The Reaction of the Class Members is Positive, and There is No Opposition to This Settlement.

While not a Rule 23(e) or stand-alone *Jones* factor, the reactions of the Settlement Class Members and the amount of opposition are important factors for the Court's consideration of final approval too. Here, the reaction of the Settlement Class is positive, with minimal opt-outs (1), no objections by Settlement Class Members, and 650 claims. Also, there is no opposition to the overall Settlement, the attorneys' fees and expenses requested, or the service awards. Faced with no opposition, this Settlement should be finally approved.

### E. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant cash relief. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of the Rule 23(e) and *Jones* factors weighs in favor of Final Approval. For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the settlement and certify the Settlement Class.

Dated this 27th day of December, 2024

Respectfully submitted,

s/ David K. Lietz
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
E-mail: dlietz@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
E-mail: gklinger@milberg.com

*Attorneys for Plaintiffs and the Settlement Class*

### CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2024, I caused the foregoing document to be filed with the Clerk of this Court via the Court's CM/ECF system, which will cause a true and correct copy to be served electronically on all counsel of record.

*/s/ David K. Lietz*
David K. Lietz